**JOHN DEERE COMPANY, Plaintiff,**

v.

**Gary GRIGSBY, Defendant.**

**Civ. A. No. 87–AR–5425–NW.**

United States District Court,
N.D. Alabama,
Northwestern Division.

Sept. 25, 1987.

Larry C. Weaver, Eyster, Key, Tubb, Weaver & Roth, Decatur, Ala., for plaintiff.

**MEMORANDUM OPINION**

ACKER, District Judge.

The complaint of John Deere Company seeks a money judgment against Gary Grigsby for the balance allegedly due on a piece of farm equipment and for the possession of the piece of equipment in which John Deere claims a security interest. Simultaneously with its complaint, John Deere filed a motion for an *ex parte* writ of seizure. This motion is accompanied by an affidavit which states, *inter alia:*

The property made the subject of this action is described as follows:

One John Deere Model 6620 Combine four wheel drive (Serial Number: 502800)

This property is now in the possession of Gary Grigsby and is physically located at Route 1, Florence, Alabama 35630. In my capacity as legal administrator for the said John Deere Company, I know that the plaintiff is entitled to possession of the said equipment by virtue of an installment contract and security agreement executed by Gary Grigsby in favor of Crews Equipment Company, a corporation, which installment contract and security agreement was subsequently assigned to the said plaintiff, John Deere Company. The said plaintiff, John Deere Company, was given the right to possession of the equipment in the event of default under the terms of the said installment contract and security agreement and default has occurred in that payment has not been made as required under the terms of the said installment contract and security agreement. The subject installment contract and security agreement may be identified by the contract number designated in the upper right hand portion of the said contract as 424–76–9191AQ. This contract is past due as of June 15, 1987 in the amount of $8,061.62 and the net amount owed thereunder is $14,212.01. A true and correct copy of the subject retail installment contract and security agreement is attached to plaintiff's complaint as Exhibit "A".

The equipment described herein is wrongfully detained by the defendant and the same is being converted wrongfully for the use of the defendant. I believe that there is substantial risk that damage might be done to the equipment if this equipment is not ordered seized by the United States District Court. This belief is based upon the fact that the equipment is continually being used in the defendant's farming operations and I feel that it is necessary for the equipment to be seized and attached so that no further loss, dimunition in value, disposition, transfer or damage to the equipment will occur by allowing the defendant to continue in possession of the equipment.

John Deere does not inform the court of the statutory basis for its requested writ of seizure. If there is a basis, it is necessarily in the law of Alabama, because any such power in this court derives from state law pursuant to Rule 64, F.R.Civ.P. John Deere desires immediate or extraordinary relief in the form of an order directing the United States Marshal to take possession of the farm equipment without a pre-seizure or prejudgment hearing of any kind.

Under the historical procedures long recognized and utilized by this court, John Deere's motion and affidavit is in perfect order. Although every federal judge in the State of Alabama, if he has been on the bench for any length of time, has, like his counterparts among the state judiciary, routinely granted such writs of seizure under the method invoked here by John Deere, this court is now unsure of the lesson eventually to be learned from *Jones v. Preuit & Mauldin*, 808 F.2d 1435 (11th Cir.1987), and 822 F.2d 998 (11th Cir.1987), a case which is presently the subject of a petition for rehearing *en banc* by the Eleventh Circuit. One possible reading of *Jones v. Preuit & Mauldin* leads to the conclusion that there is no such thing as a valid pre-judgment seizure of personal property without a pre-seizure hearing, even though there may be a preseizure bond requirement and various post-deprivation remedies in the event the seizure is ultimately determined to have been erroneous or unlawful.

While this court is not sure, this court strongly suspects that Alabama now has no statutory pre-judgment seizure procedure which meets the constitutional requirements of "due process," as those requirements have been interpreted by the Supreme Court and by the Eleventh Circuit. This court does not want to make the same mistake that Honorable Billy C. Burney made at the request of Preuit & Mauldin and by doing so to expose John Deere to the same potential liability to which Preuit & Mauldin was and still is exposed. It goes without saying that the attorneys who

here appear for John Deere are competent and have an excellent reputation. Nevertheless, this court is not sure what the Eleventh Circuit and the Supreme Court may conclude respecting the question of whether or not the unconstitutionality of Alabama's prejudgment seizure procedures is "clearly established" within the so-called "objective standard" of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982). Of course, the "objective standard" in *Harlow* has been substantially ameliorated in favor of a defendant in an action brought under 42 U.S.C. § 1983 by *Anderson v. Creighton*, — U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), in which the Supreme Court introduced what appears to be a "reasonable man" standard for qualified immunity when it held:

> The contours of the right must be sufficiently clear that a *reasonable* official would understand that what he is doing violates that right. ... [I]n the light of preexisting law the unlawfulness must be *apparent*.

107 S.Ct. at 3039 (emphasis supplied).

\* \* \* \* \* \*

> Law enforcement officers whose judgments in making these difficult determinations are objectively legally *reasonable* should no more be held personally liable in damages than should officials making analogous determinations in other areas of law.

*Id.* at 3041 (emphasis supplied). As careful and diligent as John Deere's counsel may be, this court doubts that they, or other lawyers in the State of Alabama with a few minor exceptions, are familiar with the unpublished opinion of Honorable Frank H. McFadden of this court in *Wiggins v. Roberts*, CV 75–M–1760 (N.D.Ala.1978), in which Judge McFadden held that Alabama's statutory scheme for prejudgment attachments is unconstitutional. Either the Alabama Legislature has never learned of Judge McFadden's ruling or has deliberately chosen to ignore it, because since it was entered in 1978 the Legislature has done nothing whatsoever to meet Judge McFadden's constitutional criticisms.

The undersigned judge, as did Judge Burney in his *Preuit & Mauldin v. Jones*, enjoys judicial immunity. But John Deere, like Preuit & Mauldin, does not! Therefore, this court will undertake to save John Deere from the fate which Judge Burney inadvertently inflicted on Preuit & Mauldin and will decline to issue the writ of seizure. If this particular piece of farm equipment should be seized from Mr. Grigsby, he might lose his crop. If Mr. Grigsby should lose his crop, he might lose his farm. If Mr. Grigsby should lose his farm, he might suffer such a fit of depression that he would retreat into a catatonic state. This scenario could lead to a very substantial award of compensatory and punitive damages against John Deere under 42 U.S.C. § 1983, not to mention substantial attorney's fees under 42 U.S.C. § 1988. The court will not expect a "thank you" from John Deere for the protection here afforded by not granting its motion. The court will join John Deere in crossing its fingers in the meanwhile about what happens to the farm equipment pending a final adjudication.

It is ironic that John Deere can avoid any exposure under 42 U.S.C. § 1983 by the expedient of engaging in "self-help" under the provision of the security agreement here executed by Mr. Grigsby which says: "In the event of default ... holder may take possession of the Goods...." The seizure by a private repossession team pursuant to a contract right to take possession has not received constitutional criticism by the Supreme Court or by the Eleventh Circuit, and apparently is perfectly legal so long as no breach of the peace occurs during the seizure. This method, of course, involves no pre-seizure bond or scrutiny by a judicial officer. Not having employed this method, John Deere would no doubt prefer the possibility of recovering, after trial, a worn-out piece of equipment which it could sell for little or nothing, and a deficiency judgment against an insolvent farmer, instead of an opportunity to defend a major "due process" lawsuit as in *Jones v. Preuit & Mauldin*.

The court will expedite this cause and, if requested by John Deere, will foreshorten

Mr. Grigsby's time for answering the complaint and will entertain a request for a preliminary injunction or temporary restraining order to prevent Mr. Grigsby from damaging or disposing of the equipment pending a final determination on the merits. Such procedures do not depend upon any possibly invalid Alabama statutes or procedures.